**CHICAGO BRIDGE & IRON CO. and CHICAGO BRIDGE & IRON CO., LTD., Plaintiffs**

**v.**

**HESS OIL VIRGIN ISLANDS CORPORATION and THE LITWIN CORPORATION, Defendants**

Civil No. 141-1970

District Court of the Virgin Islands

Div. of St. Croix

April 10, 1975

NICHOLS & SILVERLIGHT, ESQS. (IRVING SILVERLIGHT of counsel), Christiansted, St. Croix, V.I.

BAILEY, WOOD & ROSENBERG, ESQS. (WILLIAM BAILEY of counsel), St. Thomas, V.I.

BIRCH, DEJONGH & FARRELLY, ESQS. (ALEXANDER FARRELLY of counsel), St. Thomas, V.I.

YOUNG, *District Judge*

### MEMORANDUM OPINION AND JUDGMENT

A court trial was held in this action on September 18, 1974. Plaintiff, Chicago Bridge and Iron ("C.B.I."), in its complaint alleges that defendant, The Litwin Corporation ("Litwin"), and defendant Hess Oil Virgin Islands Corporation ("Hess"), were either singly or jointly at fault in an accidental loss of property at Port Hess, St. Croix, on April 27, 1969. An American Hoist Crane Model 4450, which belonged to C.B.I., was negligently hoisted from the deck of a ship to the shore and was dropped into the water between the ship and shore. Hess owned the crane employed to do the hoisting from ship to shore, but the crane was operated by Litwin's employees. Litwin cross-claimed against Hess for breach of Hess' contractural obligation to obtain insurance for the benefit of Litwin which Litwin alleges would have covered the potential liability of Litwin to C.B.I. in this action.

It was evident at the trial that C.B.I. was not at fault, contributorily or otherwise, in the accident, and neither of the defendants disputes the proposition that one or the other of them is liable to C.B.I. All parties have stipulated

that the amount of damages to which C.B.I. is entitled is $45,580.95.

After considering the evidence presented at the hearing, I find that the accident was due solely to the fault of Litwin. The question of the relative obligations of Hess and Litwin in regard to insurance was to be submitted on briefs. However, Litwin has not filed a brief on the question. I have reviewed the brief filed by Hess and the contract in question. I am satisfied that Hess was not under an obligation to obtain insurance protecting Litwin from any liability for property loss or damage incurred by third parties as a result of Litwin's negligence.

On April 27, 1969, the ship Inagua Pilot brought two cranes to Port Hess, St. Croix, to be unloaded. The first crane to be unloaded was the C.B.I. crane that is the subject of this litigation. It was being brought to St. Croix for use in connection with C.B.I.'s contract with Hess. The unloading was done by Litwin using an American Hoist Crane Model 999 belonging to Hess. Philip Peterson, an employee of American Hoist Corporation in its crane division was on board the Inagua Pilot that day because the second crane to be unloaded from the ship was being delivered by American Hoist to Hess. Peterson is a mechanical engineer by profession and had been with American Hoist's Crane Division for eighteen (18) years at the time of the accident. He testified at trial as an expert and as an eye witness. He gave a simple explanation of what happened during the unloading and why it happened, and his testimony was corroborated by the other eye witnesses. I accept his testimony as an accurate recounting of what occurred.

Peterson testified that the C.B.I. crane being unloaded weighed 45 tons, the same weight as the crane he was delivering. Hess' American 999 crane which was being used to unload the C.B.I. crane had more than adequate capacity for the job, but it was rigged incorrectly. The Hess crane

601

was rigged with 125 feet of boom which was too much boom for a 45 ton load as indicated by the chart which accompanied the Hess crane. To lift 45 tons, the boom should have been 80 feet in length; therefore, it was necessary for a section to be taken out of the boom—an operation that would have taken about 1½ hours. Peterson advised the Litwin crew of the problem with the boom and was advised to mind his own business. Peterson then took a ring-side seat to watch his prediction become reality.

The C.B.I. crane was lifted from its position on the Inagua Pilot and was being swung to the shore. The back of the Hess crane began to come up causing the load to decline in height and to catch on a davit of the ship. The operator of the unloading crane continued to swing the boom toward the shore, the load came free of the davit and fell into the water toppling over Hess' crane in the process. Litwin had an obligation to unload the crane in a workmanlike manner which it violated; rejecting Peterson's expert advice compounds Litwin's negligence.

### CROSS–CLAIM OF LITWIN

Hess and Litwin made detailed arrangements for insurance in their August 5, 1968 contract. Generally the contract allocated to Litwin the responsibility for insuring against liability to others for its own negligent acts. Hess was responsible for insuring against damage or loss to itself which might otherwise result in a subrogated claim by Hess against Litwin, were it not for the waiver by Hess of any right of subrogation against Litwin. Paragraph A of Article VI of the contract provides:

"Contractor [Litwin] shall indemnify and hold Hess Oil Virgin Islands Corporation harmless from and against any and all loss, damage, injury, liability and claims thereof, including claims for personal injuries, death and property damage and loss unless caused by the sole negligence of Hess Oil Virgin Islands Corporation."

Paragraph C provides:

> "Contractor shall, and shall cause its subcontractors to maintain the following insurance at all times while performing work hereunder. Such insurance shall cover, among other risks, the contractural liability assumed under Paragraph A hereof."

Litwin obligated itself to obtain personal injury and property damage liability insurance in a sub-paragraph under Paragraph C. Hess obligated itself to obtain ocean cargo insurance and include the contractor's and sub-contractor's interests. Further, Hess agreed to waive any subrogation rights against them. Ocean cargo insurance is a contract of indemnity whose purpose is to protect the insured against loss due to damage or destruction of its property. No property of Hess is involved in the instant case; the mishandled crane belonged to C.B.I. Hess was not obligated to insure Litwin against the consequences of Litwin's negligence, that type of insurance is liability insurance and Litwin was obligated under Article VI(c) to obtain liability insurance.

Hess was also obligated to obtain all risk builder's risk insurance. Like ocean cargo insurance, builder's risk insurance is property insurance which indemnifies the owner of property against loss resulting from damage or destruction of its property. The risk which was involved in the instant case, was risk of liability, and this risk was allocated to Litwin by the contract.

## JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED, DECREED and ADJUDGED:

1. That Plaintiff Chicago Bridge and Iron Company recover from Defendant Litwin Corporation the sum of $45,580.95, costs of this action and attorney's fees to be

■

determined after the filing of an affidavit and a bill of costs and a hearing thereon if requested;

2. That the cross claim of Defendant Litwin Corporation against Defendant Hess Oil Virgin Islands Corporation be dismissed, and that Hess Oil Virgin Islands Corporation be awarded its costs of this action and attorney's fees to be determined after the filing of an affidavit and a bill of costs and a hearing thereon if requested; and

3. That this Judgment be entered nunc pro tunc as of September 18, 1974 with interest on the Judgment accruing at the statutory rate from that date.